UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DIRECTV LATIN AMERICA, LLC,                          :
individually and in the right and on behalf          :    **08 Civ. 3987 (VM)(GWG)**
of LATIN AMERICAN SPORTS, LLC,                       :
                                                     :
           Plaintiff,                                :
                                                     :
        v.                                           :
                                                     :
PARK 610, LLC,                                       :
CARLOS VICENTE AVILA,                                :
ROBERTO TIMISTIT,                                    :
CARLOS PRATOLA,                                      :
ALEJANDRO ZUNDA CORNELL and                          :
DOES 1 through 10,                                   :
                                                     :
           Defendants,                               :
                                                     :
        and                                          :
                                                     :
LATIN AMERICAN SPORTS, LLC,                          :
                                                     :
           as a Nominal Defendant.                   :
------------------------------------------------------------X

# MEMORANDUM OF LAW IN REPLY TO
# DEFENDANT AVILA'S OPPOSITION TO THE MOTION
# TO CONFIRM THE ORDER OF ATTACHMENT

> MINTZ & GOLD LLP
> Steven G. Mintz (SM 5428)
> Terence W. McCormick (TM 2173)
> 470 Park Avenue South
> 10th Floor North
> New York, New York 10016-6819
> Tel:   (212) 696-4848
> Fax:   (212) 696-1231
> *Attorneys for Plaintiff*
> *DIRECTV Latin America, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 3

POINT I    DIRECTV HAS AMPLY ESTABLISHED
           THAT AVILA BREACH HIS FIDUCIARY
           DUTY AS A CO-VENTURER ................................................................. 3

POINT II   DIRECTV HAS SUFFICIENTLY
           ESTABLISHED AVILA'S LIABILITY
           FOR FRAUD ............................................................................................. 8

CONCLUSION ................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                **Page**

*900 Unlimited, Inc. v. MCI Telecommunications Corp.*,
    215 A.D.2d 227, 626 N.Y.S.2d 188 (1st Dep't 1995) .............................................. 9

*Birnbaum v. Birnbaum*,
    73 N.Y.2d 461, 541 N.Y.S.2d 746, 539 N.E.2d 574 (1989) ................................. 3

*Blue Chip Emerald LLC v. Allied Partners, Inc.*,
    299 A.D.2d 278, 750 N.Y.S.2d 291 (1st Dep't 2002) ......................................... 3, 5

*Boyle v. McGlynn*,
    28 A.D.3d 994, 814 N.Y.S.2d 312 (3rd Dep't 2006) .............................................. 8

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*,
    98 F.3d 13 (2d Cir. 1996) .................................................................................... 11

*Brown Harris Stevens Residential Sales, LLC v. Oxford Capital Corp.*,
    306 A.D.2d 112, 759 N.Y.S.2d 876 (1st Dep't 2003) ............................................ 5

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*,
    68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) ........................ 11

*Dymm v. Cahill*,
    730 F. Supp. 1245 (S.D.N.Y. 1990) ..................................................................... 4

*Gizzi v. Hall*,
    300 A.D.2d 879, 754 N.Y.S.2d 373 (3rd Dep't 2002) .......................................... 11

*Graubard Mollen Dannett & Horowitz v. Moskovitz*,
    86 N.Y.2d 112, 629 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995) ............................ 11

*Indosuez v. Barclays Bank PLC*,
    181 A.D.2d 447, 580 N.Y.S.2d 765 (1st Dep't 1992) ............................................ 9

*In re USACafes, L.P. Litigation*,
    600 A.2d 43 (Del. Ch. 1991) ................................................................................ 4

*Jablonski v. Rapalje*,
   14 A.D.3d 484, 788 N.Y.S.2d 158 (2nd Dep't 2005) ................................................ 8

*Junius Construction Co. v. Cohen*,
   257 N.Y. 393, 178 N.E. 672 (1931) ....................................................................... 8

*Kaufman v. Cohen*,
   307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ............................................. 9

*MacNamara-Carroll Inc. v. Delaney*,
   244 A.D.2d 817, 666 N.Y.S.2d 264 (3rd Dep't 1997),
   *lv. denied in part and dismissed in part*, 91 N.Y.2d 1001 (1998) .......................... 9

*Meinhard v. Salmon*,
   249 N.Y. 458, 164 N.E. 545 (1928) ................................................................. 3, 8

*Merrill Lynch, Pierce Fenner & Smith, Inc. v. Chipetine*,
   221 A.D.2d 284, 634 N.Y.S.2d 469 (1st Dep't 1995) ............................................ 8

*Richbell Information Systems, Inc. v. Jupiter Partners, L.P.*,
   309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003) ........................................ 3, 7

*Sabo v. Delman*,
   3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957) ................................. 10

*Scharf v. Tiegerman*,
   166 A.D.2d 697, 561 N.Y.S.2d 271 (2nd Dep't 1990) ........................................... 9

*Sokoloff v. Harriman Estates Development Corp.*,
   96 N.Y.2d 409, 729 N.Y.S.2d 425, 754 N.E.2d 184 (2001) ................................. 3

*Striker v. Graham Pest Control Co.*,
   179 A.D.2d 984, 578 N.Y.S.2d 719 (3rd Dep't),
   *lv .dismissed*, 79 N.Y.2d 1040 (1992) .................................................................. 9

*See S & K Sales v. Nike, Inc.*,
   816 F.2d 843 (2d Cir.1987) ................................................................................. 4

*Tobias v. First City Nat'l Bank and Trust Co.*,
   709 F. Supp. 1266 (S.D.N.Y. 1989) ..................................................................... 4

*Westchester County v. Welton Becket Assocs.*,
    102 A.D.2d 34, 478 N.Y.S.2d 305 (2nd Dep't 1984),
    *aff'd*, 66 N.Y.2d 642 (1985) ............................................................................... 5

*Zoren v. Genesis Energy, L.P.*,
    836 A.2d 521 (Del. Ch. 2003) .............................................................................. 4

## Statutes and Other Authorities

N.Y. C.P.L.R. § 6201(1) ............................................................................................. 1

N.Y. C.P.L.R. § 6211 ................................................................................................. 1

N.Y. C.P.L.R. § 6212 ................................................................................................. 1

## PRELIMINARY STATEMENT

Plaintiff, DIRECTV Latin America, LLC, ("DIRECTV" or "Plaintiff"), respectfully submits this Reply Memorandum of Law in response to the opposition papers submitted by defendant Carlos Vicente Avila ("Avila") and in further support of DIRECTV's motion to confirm this Court's Orders of Attachment, entered on April 29, 2008.[1]  In his opposition papers, defendant Avila has confined himself to debating whether DIRECTV has established a probability of succeeding on the merits of its action as required by CPLR § 6212(a).[2]  The problem with Avila's argument is that it ignores the 800-pound gorilla at the center of this litigation, *i.e.*, the kickback conspiracy between Avila and DIRECTV's faithless employees, defendants Carlos Pratola ("Pratola") and Alejandro Zunda Cornell ("Zunda") in connection with a joint venture whereby Avila and DIRECTV established and distributed a golf-themed television channel to subscribers in the Latin American market.  The vehicle by which Avila and DIRECTV conduct the joint venture is the nominal defendant, Latin American Sports, LLC.

The thrust of DIRECTV's complaint is that, *at the same time that Pratola and Zunda were ostensibly representing DIRECTV's interests in the negotiation and operation of the joint venture*, there was a secret side agreement among Defendants Avila, Pratola and Zunda that would enable Pratola and Zunda to receive an illicit share

---

[1] Neither Defendant Carlos Pratola, Alejandro Zunda Cornell nor Diego Clemente has appeared yet in this action.

[2] Avila does not dispute that one or more of the grounds for attachment set forth in CPLR §6201 exist and that both the Orders of Attachment and the motion to confirm are otherwise procedurally proper.  Thus, those elements of the motion before this Court should be deemed resolved in Plaintiff's favor without extended discussion.  In any event, Plaintiff's initial submission on this motion established that Avila is a non-domiciliary residing without the State, that the instant motion is timely and that the amount demanded "exceeds all counterclaims known to [P]laintiff."  *See* CPLR §§6201(1), 6211, 6212.

of the profits from the golf channel. The scheme was accomplished through a transfer by Avila to Pratola and Zunda of his beneficial interest in one or both of the two Uruguayan corporations (Tumely, S.A. ["Tumely"] and Loraine S.A. ["Loraine"]) that own defendant Park 610, LLC ("Park 610"). Park 610, in turn, is the corporate entity that hold's Avila's 55% share of the joint venture. (*See* Amended Verified Complaint, attached as Exhibit 2 to the Supplemental Hartman Declaration, at ¶¶25, 28, 40, 41).

Avila had to conceal from DIRECTV the plan to cut Pratola and Zunda in on the profits from the joint venture because those two individuals were DIRECTV's trusted employees in Latin America and, as such, *had no business negotiating* a side deal with DIRECTV's joint venturer, placing themselves on both sides of DIRECTV's transaction with Avila. It is against this backdrop that DIRECTV has sued Avila for, among other things, breach of fiduciary duty (Fifth Cause of Action) and fraud (Sixth Cause of Action) – both of which claims involve a demand for relief in the form of money damages.[3] As is discussed in detail below, there is ample support for these causes of action. Accordingly, the Orders of Attachment are entirely proper and must be confirmed.

---

[3] Plaintiff's First and Second Causes of Action assert claims involving breaches of the contract between Plaintiff and Park 610, LLC ("Park 610") and do not seek money damages. Since those Causes of Action involve equitable and declaratory relief, they do not form the basis for DIRECTV's application for Orders of Attachment against Defendants Avila, Pratola, Zunda and Diego Clemente. Consequently, they are not relevant to the present motion to confirm. Indeed, Avila's opposition papers acknowledge as much. *See* Avila's Memorandum of Law in Opposition ("Def. Mem."), pp. 3-4. The fact that Avila has nevertheless chosen to initiate his argument with a detour into these Causes of Action and, in fact, has devoted nearly two pages of his 15-page Memorandum of Law (pp. 2-3) to them speaks volumes about the weakness of his legal position on this motion, which is grounded on the other Causes of Action, for money damages. The Court should not be distracted by Avila's irrelevant arguments on this point.

# ARGUMENT

## POINT I

### DIRECTV HAS AMPLY ESTABLISHED THAT AVILA BREACHED HIS FIDUCIARY DUTY AS A CO-VENTURER

A member of a joint venture, formed by either an express or implied agreement, unquestionably owes a fiduciary duty to other members of the venture. *See, e.g., Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 541 N.Y.S.2d 746, 539 N.E.2d 574 (1989); *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928); *Richbell Information Systems, Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003). The duty encompasses an obligation of undivided and undiluted loyalty. *See, e.g., Birnbaum v. Birnbaum*, 73 N.Y.2d at 466, 541 N.Y.S.2d at 748, 539 N.E.2d at 576.

The duty co-venturers owe to each other imposes "a stringent standard of conduct" that is enforced with "'uncompromising rigidity'" by the New York courts. *Blue Chip Emerald LLC v. Allied Partners, Inc.*, 299 A.D.2d 278, 276, 750 N.Y.S.2d 291, 295 (1st Dep't 2002)(quoting *Meinhard v. Salmon*, *supra*, 249 N.Y. at 464). The stringent standard of conduct requires, among other things, full disclosure of all material facts whenever a co-venturer engages in a transaction that relates to the subject matter of the fiduciary relationship. *Blue Chip Emerald LLC v. Allied Partners, Inc.*, 299 A.D.2d at 279, 750 N.Y.S.2d at 295. Moreover, where a fiduciary relationship exists, the fiduciary breaches his or her obligations by entering into an agreement with third parties that adversely affects his or her partner's interests. *See Sokoloff v. Harriman Estates*

*Development Corp.*, 96 N.Y.2d 409, 729 N.Y.S.2d 425, 754 N.E.2d 184 (2001) (discussing agent's fiduciary duty to principal).

Avila protests, albeit without any elaboration, that he does not owe any fiduciary duties to DIRECTV in connection with the golf channel, even though Park 610 manifestly does. (Def. Mem. at 9). Avila is wrong. As Park 610's chairman and sole control person, Avila owes the same duties to DIRECTV that are owed by Park 610, inasmuch as he ultimately has power over DIRECTV's investment. *See, e.g., In re USACafes, L.P. Litigation*, 600 A.2d 43 (Del. Ch. 1991)(directors of corporate general partner liable for corporation's breach of duty to limited partners); *also see Zoren v. Genesis Energy, L.P.,* 836 A.2d 521, 528 (Del. Ch. 2003). New York courts have followed the same rationale. *See also Dymm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990); *see also Tobias v. First City Nat'l Bank and Trust Co.*, 709 F. Supp. 1266 (S.D.N.Y. 1989). Alternatively, Avila is liable for knowing participation in, and aiding and abetting the breach of fiduciary duty by Park 610, which is therefore imputed to him. *See S & K Sales v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987).

As a purely factual matter, in his opposition papers, Avila has not disputed any of the essential facts on which the Fifth Cause of Action is based, *e.g.*, that he conveyed all of the shares of Tumely to an entity controlled by Pratola and Zunda, Leraman, S.A. At best, Avila has hidden behind "non-denial denials." Thus, it must be assumed for purposes of this motion that, as DIRECTV has amply demonstrated, Avila simultaneously negotiated and implemented his joint venture with DIRECTV while plotting to give Pratola and Zunda a kickback in the form of a secret interest in the joint

4

venture, at the same time that Pratola and Zunda were supposed to be representing DIRECTV's interests in the transaction, despite the fact that the kickback was wholly inconsistent with their obligations as DIRECTV's employees.[4] In the end, Avila arranged for Pratola and Zunda to become "silent partners" in the golf channel without telling DIRECTV (their employer).[5]

Under the "stringent standard of conduct" that is applied to joint venturers in New York, Avila clearly had a duty to refrain from engaging in side deals amounting to giving kickbacks to DIRECTV's employees. At the very least, Park 610 and Avila had a duty to disclose to DIRECTV the existence of his side deal with Pratola and Zunda. *See Blue Chip Emerald LLC v. Allied Partners, Inc.*, 299 A.D.2d at 276, 750 N.Y.S.2d at 291, 295. This duty existed regardless of whether or not Avila made any affirmative misrepresentations or omissions regarding Pratola's and Zunda's roles. *See Brown Harris Stevens Residential Sales, LLC v. Oxford Capital Corp.*, 306 A.D.2d 112, 759 N.Y.S.2d 876 (1st Dep't 2003); *see also Westchester County v. Welton Becket Assocs.*, 102 A.D.2d 34, 478 N.Y.S.2d 305 (2nd Dep't 1984), *aff'd*, 66 N.Y.2d 642, 495 N.Y.S.2d 364, 485 N.E.2d 1029 (1985).

---

[4] Avila, who is certainly in a position to know, has never contested the fact that Leraman, the entity to which he transferred Tumely, is owned by Pratola and Zunda. Moreover, Plaintiff's forensic examination of these two employees' computers revealed that they had email correspondence pertaining to the transfer and drafts of the transfer agreement. *See* Declaration of Michael Hartman, dated April 28, 2008 ("Hartman Declaration") at ¶27-34 and Exhibits 6, 7, 8 & 9 thereto. Manifestly, there would have been no reason for Pratola and Zunda to have received these drafts on their computers if they had not been involved on the Leraman side of the transaction.

[5] Although Avila's motives in giving Pratola and Zunda such a valuable benefit are not known at this point, one obvious inference is that he was rewarding them for the role they played in bringing Avila together with Plaintiff. Of course, Pratola and Zunda were not entitled to receive such a "gratuity," since they were employed by Plaintiff and were already being paid to exercise their best efforts in DIRECTV's behalf, i.e., to represent *DIRECTV's* interests in the joint venture, not Avila's or their own.

5

Moreover, the fact that the undisclosed kickback scheme with Pratola and Zunda was conducted through a layer of corporate holding companies does not alter the fundamental duty that Avila had to disclose the transaction to DIRECTV, his business partner. Contrary to Avila's contention that the transaction involving Tumely and Leraman "d[id] not concern" either DIRECTV or the parties' joint venture (Def. Mem. at pp. 10-12), DIRECTV had every right to know that its own employees (the very same employees who had advocated for the joint venture) were receiving a gratuity in the form of a substantial share in the venture from DIRECTV's co-venturer, Avila.[6]

Furthermore, Pratola's and Zunda's participation in the joint venture that resulted from the transfer of Tumely to Leraman was of direct concern to DIRECTV because it was incompatible with the notion of a partnership with Avila. As is indicated in the Complaint (¶ 16), Avila's personal history in developing sports programming in Argentina was the primary inducement to DIRECTV in undertaking the golf channel venture. It was for that reason that DIRECTV had insisted that Avila maintain 100% beneficial ownership and control of Park 610, the entity through which he would be conducting his side of the joint venture. *Id*. That is the *entire point* of making a "Change

---

[6] Avila attempts to confuse the issue by pointing to a recent transfer of a non-controlling interest in the Plaintiff's ultimate parent corporation, The DIRECTV Group, Inc. (Def. Mem. at p. 11 & n.7). However, the two situations are inapposite. First, the instant motion does not directly concern whether or not Events of Default took place under the LLC Agreement. More important, the publicly disclosed exchange by News Corporation of a 41% minority interest in Plaintiff's ultimate parent in return for shares of News Corporation held by Liberty Media in an arms-length business deal is a far cry from the transfer of one of Park 610's parents as a kickback to the two employees of Plaintiff who had essentially brokered the joint venture with Plaintiff and were supposed to have been acting as Plaintiff's disinterested agents. Put another way, for purposes of the joint venture, the News Corp/Liberty Media deal was a complete non-event; by contrast, the conveyance of Tumely to Leraman was a clandestine attempt to circumvent a fundamental assumption about who DIRECTV was doing business with.

6

of Control of a Member" an "Event of Default." *See* Hartman Declaration, Exhibit 3, §13.1(e).

Whether or not the transfer of Tumely, one of the two corporations that owned "Member" 610 Park, was a "Change of Control of a Member" under the joint venture agreement,[7] it was clearly in direct contravention of DIRECTV's stated interest in being in business *solely* with Avila. Indeed, this interest – and the implications of the control provisions of agreement – were explicitly recognized in an e-mailed redline draft of the Leraman transaction documents generated by Avila's attorney, Hector Viana, which recognized that the transfer of Tumely to Leraman, Pratola's and Zunda's corporation, "means a change of control in Park 610 *that is in violation of the [joint venture] agreement*" and that "[a]s long as the [control] restriction is in place, Avila must maintain management." *See* Complaint ¶ 46 (emphasis supplied), Hartman Decl. at Exhibit 8, p. 4. The intent to circumvent DIRECTV's contract rights and expressed wishes is clearly reflected in this correspondence.

In any event, regardless of whether Avila's conduct constituted a breach of the joint venture agreement, Avila's participation in the surreptitious transfer of an indirect interest in the joint venture to DIRECTV's employees constituted a breach of his absolute

---

[7] Plaintiff maintains that a "Change of Control" as well as a prohibited "Transfer" within the meaning of the joint venture agreement occurred and that, consequently, there was an "Event of Default," triggering the contractual remedies for such acts. The conveyance of Tumely and/or the additional pledge or other conveyance of equity rights in Loraine constitute a change in beneficial ownership, direct or indirect, of Park 610 and LAS, which Avila simply sought to camouflage through the use of Park 610's parents. However, the question of whether the Tumely/Leraman transaction constitutes one or more "Events of Default" is not ripe for consideration on the present motion, since, as previously noted, the causes of action that are based on the Events of Default seek declaratory relief and specific performance of the joint venture agreement, not money damages, and therefore do not form the basis of the Orders of Attachment. Rather, Avila's conveyance of Tumely and/or Loraine to Pratola and Zunda (Leraman) is germane to the instant motion because it separately forms the basis for DIRECTV's claims for breach of fiduciary duty and fraud.

7

duty of loyalty to DIRECTV, his co-venturer.  As the Court of Appeals stated in *Meinhard v. Salmon*, 249 N.Y. at 464, 164 N.E. at 546, a person such as Avila who has a fiduciary position is "held to something stricter than the morals of the marketplace." Since the allegations set forth in the Amended Verified Complaint and the evidence presented on this motion show beyond doubt that Avila breached his fiduciary obligations to DIRECTV, his co-venturer on the golf channel project, DIRECTV has made the requisite showing of a likelihood of success on the merits.  Thus, there is ample justification for the continuance of the order attaching Avila's property in this State, as well as the property of his confederates.

## POINT II

### DIRECTV HAS SUFFICIENTLY ESTABLISHED AVILA'S LIABILITY FOR FRAUD

Avila contends that DIRECTV has not pleaded a cause of action for fraud because it has "failed to identify a single statement or omission by Mr. Avila that was untrue or misleading." (Def. Mem. at p. 6).  The argument, however, ignores both the facts and the law.

Under New York law, conduct that amounts to "active concealment" may form the predicate for a fraud cause of action.  *See, e.g.*, *Boyle v. McGlynn*, 28 A.D.3d 994, 814 N.Y.S.2d 312 (3rd Dep't 2006); *Jablonski v. Rapalje*, 14 A.D.3d 484, 788 N.Y.S.2d 158 (2nd Dep't 2005); *Merrill Lynch, Pierce Fenner & Smith, Inc. v. Chipetine*, 221 A.D.2d 284, 634 N.Y.S.2d 469 (1st Dep't 1995).  Furthermore, a partial disclosure may constitute a tacit representation regarding undisclosed facts.  *See, e.g.*, *Junius Construction Co. v.*

8

*Cohen*, 257 N.Y. 393, 178 N.E. 672 (1931); *Indosuez v. Barclays Bank PLC*, 181 A.D.2d 447, 580 N.Y.S.2d 765 (1st Dep't 1992); *Striker v. Graham Pest Control Co.*, 179 A.D.2d 984, 578 N.Y.S.2d 719 (3rd Dep't), *lv. dismissed*, 79 N.Y.2d 1040, 584 N.Y.S.2d 449, 594 N.E.2d 943 (1992); *Scharf v. Tiegerman*, 166 A.D.2d 697, 561 N.Y.S.2d 271 (2nd Dep't 1990). Finally, the failure to disclose a material fact can constitute a fraud under New York law where there was a duty to disclose arising from a confidential or fiduciary relationship. *See, e.g.*, *Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003); *MacNamara-Carroll Inc. v. Delaney*, 244 A.D.2d 817, 666 N.Y.S.2d 264 (3rd Dep't 1997), *lv. denied in part and dismissed in part*, 91 N.Y.2d 1001, 676 N.Y.S.2d 125, 698 N.E.2d 954 (1998); *900 Unlimited, Inc. v. MCI Telecommunications Corp.*, 215 A.D.2d 227, 626 N.Y.S.2d 188 (1st Dep't 1995). All three of these tests for fraud are satisfied here.

First, it is evident even from the information uncovered thus far that Avila was engaged in "active concealment" of the Leraman transaction with Pratola and Zunda. As noted in the Hartman Declaration (¶ 31 & <u>Exhibit 7</u>, Art. 6.2), the parties to the transfer of Tumely to Leraman contrived a stipulation whereby the Tumely shares would continue to be held nominally by Avila but would actually be held for the benefit of Leraman (*i.e.*, Pratola and Zunda).[8] The evident purpose of this stipulation was to disguise the change in ownership and thereby prevent DIRECTV from learning of it.

---

[8] The Tumely Share Purchase Agreement recites: "The Seller [Avila] shall keep the Transferable Shares in its [his] name as long as the Restrictions remain in place, *but for account and order of the Buyer*" (emphasis supplied)(Hartman Decl., <u>Exhibit 7</u>, Art. 6.2). The term "Restrictions" obviously refers to the restrictions on a change in the control of Park 610 – the same "restriction" that was referred to in the email from Avila's attorney, Hector Viana, which warned that the transfer of Tumely to Leraman would "violate

9

Second, Avila's statements to DIRECTV before the joint venture was finalized, although technically accurate, were slyly misleading.  Specifically, on August 24, 2006, shortly before the joint venture transaction between Avila and DIRECTV closed, Avila's attorney issued a pointed assurance to DIRECTV that Avila owned all of the equity in Tumely and Loraine, the parent corporations of the Park 610 (Avila's corporate vehicle for the joint venture).  *See* Hartman Declaration, ¶ 24 & <u>Exhibit 5</u>.  The clear import of this assurance was to reinforce the false implication that Avila was going to retain full ownership of Park 610 during the course of the joint venture.  Yet, during this same time period that his counsel issued that assurance to DIRECTV, Avila was also scheming to secretly transfer his beneficial interest in Tumely to a corporation owned by Pratola and Zunda.  *See id.*, ¶¶ 25, 27.  Thus, Avila's August 24, 2006 statement was precisely the kind of deceptive partial disclosure that gives rise to liability for fraud.

Finally, as previously noted, Avila's role as DIRECTV's co-venturer's gave rise to a fiduciary duty, which, under New York law, gave rise to a concomitant obligation to disclose relevant facts having a direct bearing on the terms and conduct of the joint venture.  Since Avila knew from the outset that his continuing ownership of 100% of the beneficial interest he held in the joint venture was material – indeed, critical – to DIRECTV's investment decision, *see* Complaint ¶ 29, his nondisclosure of the kickback arrangement with DIRECTV's employees is alone sufficient to constitute a fraud.

---

the [joint venture] agreement" and opined that "[a]s long as the [control] *restriction* is in place, Avila must maintain management."  *See* Complaint ¶ 46; Hartman Decl., Exh. 8, p. 4 (emphasis supplied).

Avila's effort to avoid the consequences of his fraudulent conduct by pointing to the merger clause in the parties' joint venture agreement is unavailing. It is elementary under New York law that a general merger clause does not serve to exclude parol evidence of fraud in the inducement. *See, e.g.*, *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957); *Gizzi v. Hall*, 300 A.D.2d 879, 754 N.Y.S.2d 373 (3rd Dep't 2002).

Similarly, the principles discussed in *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19 (2nd Cir. 1996), on which Avila relies, have no application to this case. It is true, as noted in *Bridgestone/Firestone*, that a fraud claim cannot be predicated solely on allegations that a contracting party did not intend to perform *where the claim is premised solely on the party's nonperformance.* However, as even the *Bridgestone/Firestone* court went on to note, a plaintiff may establish a fraud arising out of a contractual relationship by showing (a) the existence of a legal duty separate from the duty to perform under the contract or (b) a fraudulent misrepresentation collateral or extraneous to the contract. *See, e.g.*, *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995); *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986). *Both* of these circumstances are amply established here.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in DIRECTV's initial submission, the order of attachment should be confirmed.

Dated:   New York, New York
         July 9, 2008

Respectfully submitted,

**MINTZ & GOLD LLP**

*Terence W. McCormick*
_____
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, N.Y. 10016-6819
Tel:   (212) 696-4848
Fax:   (212) 696-1231
*Attorneys for Plaintiff
DIRECTV Latin America, LLC*

12